

**SO ORDERED.**

**SIGNED this 7th day of October, 2016.**

_Catharine R Aron_
UNITED STATES BANKRUPTCY JUDGE

---

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CLEAN BURN FUELS, LLC, | ) | Case No. 11-80562 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| SARA A. CONTI, Chapter 7 | ) | |
| Trustee for CLEAN BURN FUELS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Pro. No. 13-09012 |
| | ) | |
| v. | ) | |
| | ) | |
| PERDUE BIOENERGY, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

THIS MATTER came on for trial on September 19, 2016, in Greensboro, North Carolina, on the limited issue of whether payments made from Clean Burn Fuels, LLC ("Clean Burn") to Perdue BioEnergy, LLC ("Perdue") pursuant to Sales Settlement Sheet Numbers 313673 and 316807 qualify as: (1) settlement payments made by or to a forward contract merchant in connection with a forward contract under 11 U.S.C. § 546(e), or (2) transfers made by or to (or

1

for the benefit of) a swap participant or financial participant in connection with a pre-petition swap agreement under 11 U.S.C. § 546(g).  At the hearing, Vicki Parrott and JP Cournoyer appeared on behalf Sarah Conti, the Trustee, who was also present.  Gregory Crampton, Steven Newton, Andrew Currie, and Carey Deeley appeared on behalf of Perdue.  Melissa Coulson, Holly Rawlinson, Doug Archer, and John Ade were sworn and testified before the Court.  At the conclusion of the trial, the Court took the matter under advisement.  After considering the testimony before the Court, the arguments of counsel, and the record in this case, the Court finds that the payments do not qualify for the §§ 546(e) or (g) defenses for the reasons which follow.

## JURISDICTION

This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334 and 157(a) and Local Rule 83.11 of the District Court for the Middle District of North Carolina.  This is a core proceeding under 28 U.S.C. § 157(b)(2) which this Court may hear and determine.  Both parties have consented to entry of final order by the Court.  [Doc. # 20].

## BACKGROUND AND ANALYSIS

During the ninety day period before the petition date in this case, Clean Burn (the "Debtor") made payments to Perdue in the amount of $14,958,293.07.  The Chapter 7 Trustee initiated this adversary proceeding on March 26, 2013 to avoid and recover those payments under 11 U.S.C. §§ 547(b) and 550(a).  In response, Perdue sought to invoke several affirmative defenses, or limitations on the Trustee's avoidance powers, under §§ 546(e), (g), (c)(1), (c)(2), and (c)(4).

Upon cross motions for summary judgment, the Court entered an order on September 29, 2015 [Doc. # 63] (the "Summary Judgment Order"), finding the Trustee had established the

prima facie elements of a preferential transfer under § 547(b) with respect to each payment; clarifying the definition of a forward contract under §546(e)[1]; and directing the Trustee to provide a list of contracts between the parties not meeting the definition of a forward contract.

The Trustee complied, and on December 10, 2015, the Court entered an order [Doc. # 75] (the "Order Partially Granting and Partially Denying Summary Judgment") granting summary judgment as to Perdue's §§ 546(e) and (g) defenses on payments made pursuant to all contracts except for those associated with Pricing Confirmation Document 277 amendment 2.[2]

On August 17, 2016, after a final pre-trial hearing, the Court entered an order bifurcating trial [Doc. # 107]. The order limited trial to consideration of Perdue's §§ 546(e) and (g) defenses with respect to the remaining payments at issue.

Before addressing the issues presented at trial, the Court will analyze the Summary Judgment Order and the Order Partially Granting and Partially Denying Summary Judgment (the "Previous Orders"). Although the Previous Orders contain a detailed analysis of what constitutes a payment made in connection with a forward contract under §546(e), the Court's application of this definition to the payments at issue in this case was less than artfully worded. To the extent necessary, as described below, the Court herein modifies those orders.[3]

---

[1] Because Perdue's § 546(g) defense incorporates the same argument as its § 546(e) defense—and relies on the definition of a forward contract—the Court addressed the § 546(g) defense alongside the § 546(e) defense in the Summary Judgment Order. The Court will do the same herein.

[2] The Trustee did submit a list of additional contracts which, in her view, did not meet the temporal requirement of a forward contract, but she also conceded that these contracts were subject to Perdue's new value defense under § 547(c)(4).

[3] Interlocutory orders may be reconsidered *sua sponte* at any time prior to entry of a final judgment. *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003); *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991); *see* Fed. R. Bankr. P. 7054(a) (stating that Rule 54(b) applies in adversary proceedings). Reconsideration of an interlocutory order is within the discretion of the court, to be exercised "'as justice requires.'" *Fayetteville Inv'rs*, 936 F.2d at 1473 (quoting 7 Moore's Federal Practice, ¶ 60.20, p. 60-170). Courts use the factors governing reconsideration of final judgments in guiding their discretionary review of interlocutory orders. *TomTom, Inc. v. AOT Sys. GmbH*, 17 F. Supp. 3d 545, 546 (E.D. Va. 2014). However, these factors do not limit the Court's broad power to amend interlocutory orders. *Id.* (citing *Am. Canoe*, 326 F.3d at 515). As discussed herein, the Previous Orders, both interlocutory in nature, contain certain statements which the Court finds should be amended.

The Previous Orders

In the Summary Judgment Order, the Court explained that Clean Burn entered into a series of related contracts with Perdue to procure corn for the production of ethanol and dried distillers grain with solubles. These contracts included a Feedstock Supply Agreement, a Co-Product Purchase and Marketing Agreement, a Lease Agreement, and a Master Agreement. The Feedstock Supply Agreement controlled the procurement and purchase of corn and the provision of other related services between the parties.

Under the Feedstock Supply Agreement, the pricing mechanism for corn was composed of a basis price (based on transportation method used, the storage capacity of the transportation, and a fixed origination fee) and a futures price, which was directly tied to the price of corn trading at a particular moment on the Chicago Board of Trade. The Feedstock Supply Agreement provided that each sale of corn was to be "evidenced by a separate Perdue sales confirmation[,]" Def.'s Trial Ex. 2 ¶ 3(b), referred to in the Summary Judgment Order (and herein) as a "Pricing Confirmation Document," *id.* at 17. These documents were labeled by the parties as "Sales Contract[s]" and "Confirmation of Pricing And/Or Contract Amendment[s]." *See* Pl.'s Trial Ex. 4. "Each Pricing Confirmation Document included the basis price, the futures price, the date the parties agreed to the contract, and an estimated quantity of corn to be withdrawn." Summ. J. Order 17. Execution of a Pricing Confirmation Document set the futures price of the corn for the next week and "finalized [each] contract", *id.* at 15, 17, or sale of corn, Def's Trial Ex. 2 ¶ 3(b).[4]

Once weekly corn usage was complete, Perdue would submit an invoice to Clean Burn. *See id.* ¶ 5(a). These invoices were labeled by the parties as "Sales Settlement Sheet[s]." *See*

---

[4] The Pricing Confirmation Documents were signed by David Hull on behalf of Perdue and Doug Archer on behalf of Clean Burn.

4

Pl.'s Trial Ex. 5.  Each Sales Settlement Sheet contained an amount of final settlement/invoice figure, an address to which to remit funds, and a payment due date.  Sales Settlement Sheets also served as records of the dates upon which corn was used under each contract—or at each futures price.

After finding that Trustee had established the prima facie elements of a preference under 11 U.S.C. § 547(b) and analyzing the definition of a forward contract under § 546(e), the Summary Judgment Order directed the Trustee to "provide the Court with those Sales Settlement Sheets that meet the definition of a forward contract." *Id.* at 18.  The Court should have more appropriately requested the parties to provide it with those *Pricing Confirmation Documents* meeting the definition of a forward contract.  The Sales Settlement Sheets were merely bills, which while often issued on a one to one ratio with Pricing Confirmation Documents, were not always issued in such a manner, as confirmed at trial.  In contrast, the Pricing Confirmation Documents constituted the written, signed contracts between the parties; these documents established the futures price of the corn and finalized each sale.

After the Trustee submitted a list of Sales Settlement Sheets, the Court entered its Order Partially Granting and Partially Denying Summary Judgment.  In the order, the Court identified Sales Settlement Sheets Numbers 313673 and 316807 as the only contracts which did not appear to meet the definition of a forward contract.  Both sheets billed corn at a price of $7.5725 and referenced Pricing Confirmation Document 277.  Confirmation Document 277 amendment 2 is the only contract under Pricing Confirmation Document 277 which established a price for corn in the amount of $7.5725, or a basis price of $.9450 and a futures price of $6.6275.  The Court should have identified Sales Settlement Sheet Numbers 313673 and 316807 as invoices with

5

respect to a contract, Pricing Confirmation Document 277 amendment 2, which did not appear to meet the definition of a forward contract.

### Pricing Confirmation Document 277 amendment 2

At trial, the issue properly before the Court was whether Pricing Confirmation Document 277 amendment 2 constitutes a forward contract. One of the essential elements of a forward contract is that the contract must have a maturity date of more than two days after entry. In the Summary Judgment Order, the Court defined the maturity date for each contract as the date upon which Clean Burn began withdrawing the corn under the contract.

Pricing Confirmation Document 277 amendment 2 lists a contract date of February 7, 2011. Perdue argued at trial that this date was incorrectly recorded.[5] The Court agrees. Perdue demonstrated by clear and convincing evidence that it would have been a factual impossibility to establish a future's prices of $6.6275 on February 7, 2011. It is clear that the futures price of $6.6275 was established on February 3, 2011. Thus, the Court finds that February 3, 2011 was the actual date of entry for Pricing Confirmation Document 277 amendment 2. Nevertheless, Pricing Confirmation Document 277 amendment 2 did not have a maturity date of more than two days after entry. Sales Settlement Sheet 313673, which preceded Sales Settlement Sheet 313807, establishes February 4, 2011, as the first date upon which Clean Burn began withdrawing corn

---

[5] While the Trustee argued that the parol evidence rule barred the Court from considering extrinsic evidence as to the contract date for Pricing Confirmation amendment 2, the Court disagrees. Under North Carolina law, which governed the contractual relationship between the parties, the parol evidence rule "does not apply to written recitals of fact in a contract, including the date upon which the agreement took effect." *Battleground Veterinary Hosp., P.C. v. McGeough*, No. 05 CVS 18918, 2007 WL 3071618, at *14, 2007 NCBC 33, ¶ 125 (N.C. Super. Oct. 19, 2007). More precisely, dates which do not very the terms of a contract, but simply "shed light on a relevant fact" constitute prima facie evidence which may be rebutted. *Id.* at *14, ¶ 126; s*ee also* 29 Am. Jur. 2d Evidence § 1126 ("Generally, parol evidence is admissible to show the true date of the execution and delivery of a contract in order to supply a date where one is lacking, or to contradict the date shown in the body of the instrument, even as to instruments which are required by statute to be in writing. However, parol evidence of the date of an instrument is not admissible where the date is a vital part of the instrument and a change of date would change the rights of the parties to the instrument."). Here, the date of the contract only matters with respect to the defenses presently at issue; the date was not an essential element of the contract which impacted any rights thereunder at execution.

under the contract for corn at a futures price of $6.6275.[6] The date of entry of the contract was one day before this maturity date. Consequently, those payments made pursuant to Sales Settlement Sheets 313673 and 316807 were not made pursuant to a forward contract.

NOW, THEREFORE, FOR THE ABOVE STATED REASONS, THE COURT HEREBY ORDERS THAT:

(1) The Previous Orders are amended as stated herein; and

(2) The payments associated with Sales Settlement Sheets 313673 and 316807 do not qualify as payments subject to exception from the Trustee's Avoidance Powers under 11 U.S.C. §§ 546(e) or (g), because Pricing Confirmation Document 277 amendment 2 does not constitute a forward contract; and

(3) The parties should prepare to proceed to trial on the issue of whether payments made pursuant to Sales Settlement Sheets 313673 and 316807 are protected from avoidance under 11 U.S.C. §§ 546(c)(1), (c)(2), or (c)(4).

[END OF DOCUMENT]

---

[6] The parties noted at summary judgment that the facts in this case were not in dispute.

SERVICE LIST

Sara A. Conti
Trustee

JP Cournoyer
Vicki Parrott
Attorneys for Trustee

Gregory B. Crampton
Steven Newton
Attorneys for Defendant

C. Carey Deeley, Jr.
Andrew J. Currie
VENABLE LLP
210 West Pennsylvania Ave.
Suite 500
Towson, MD  21204